UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**NATASHA PADGETT**
9034 W. Lisbon Avenue, #5
Milwaukee, WI 53222,

 Plaintiffs,

 v.                 Case No. 17-CV-1562

**CITY OF MILWAUKEE**
200 E. Wells Street
Milwaukee, WI 53202

 Defendant.

## COMPLAINT

 The plaintiff, Natasha Padgett, by her attorney, William R. Rettko, as and for a claim against the above named defendant, alleges and shows to the court as follows:

### NATURE OF THE CASE

 This action is brought to secure the plaintiff Natasha Padgett's civil rights to equal employment opportunity and to have the same terms, conditions and privileges of employment with the defendant City of Milwaukee which were changed by unlawful employment practices because of being denied a reasonable accommodation by the City in violation of the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. §12112(b), and because of retaliation against Natasha Padgett for undertaking protected employment practices under the ADA in violation of 42 U.S.C. §12203(a).

### JURISDICTION AND VENUE

 Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201, and the Equal Employment Opportunity Commission's Notice of Right to Sue Within 90 Days; a copy of which is attached hereto as Exhibits A and incorporated as if set forth at length herein.

## PARTIES

1.      Plaintiff, Natasha Padgett ("Padgett"), is an adult resident of the County of Milwaukee, State of Wisconsin, and has been employed continuously by the City of Milwaukee as a Police Officer in the Milwaukee Police Department ("MPD") since December 18, 2006.

2.      Defendant, City of Milwaukee ("City"), is a municipal corporation with its principal offices located at 200 E. Wells Street, Milwaukee, Wisconsin 53202 and is and was at all material times hereto a municipal employer of all Milwaukee Police Department ("MPD") employees including Padgett.

## STATEMENT OF CLAIMS

3.      On December 14, 2008, Padgett during the course of her duties as a MPD police officer was dragged by a fleeing suspect's car for about one block before being thrown from it which resulted in Padgett suffering a traumatic brain injury, cervical disc herniation at C5 and C6 as well as lumbar disc herniation at L5-S1.

4.      Padgett returned to a light duty position in December 2008, but went back to a full duty assignment from January 6, 2009 through December 21, 2010 before being placed on light duty in District #6 due to continued issues with the herniated disc in her neck.

5.      Padgett remained in this light duty assignment until June 15, 2016 when she was transferred to a light duty assignment in Technical Communications Division - Differential Police Response Unit ("DPRU") where Padgett performed pole camera operator duties.

6.      Since February 12, 2012, Padgett remained under the care of Dr. Shekhar A. Dagam (neurosurgeon) who treated her cervical and lumbar disc herniations, and also placed her on permanent work restrictions requiring light duty work of no more than 8 hours per day with lifting restrictions.

7.      Padgett remained under the continuous care of Dr. Veronica Sosa (neurologist) and Dr. Rhea Steinpreis (neuropsychologist) for epilepsy, migraines and long term effects from

the traumatic brain injury that includes deficits with working memory and mental processing speed especially with auditory processing.

8. Padgett's traumatic brain injury is permanent and also resulted in a permanent post traumatic stress disorder all of which caused her brain to have difficulty with auditory processing although her hearing is normal and is retaining information which makes it difficult for Padgett to process verbally transmitted information placing her in the lower 25% of verbally presented material with her working memory being accessed in the bottom 4 %, but maintaining strong attention to visual detail and a strong recall of visually presented material ranking her in the top 10%.

9. As a result of Padgett's doctor assessments, Dr. Steinpreis sent the MPD a request on August 26, 2016 to accommodate Padgett with a position in which she could use her superior visual and monitoring skills to function such as a pole camera operator while indicating she should not be assigned positions requiring her to interview people because of the risk she would miss important details and possibly the entire conversation.

10. The MPD reviewed Dr. Steinpreis' restrictions and requested accommodations determining that Padgett was unable to perform the essential functions of her prior limited duty assignments while at District #6 and placed her on a Medical Leave of Absence on August 30, 2016.

11. On September 9, 2016, the MPD requested clarifications from Dr. Steinpreis on the restrictions she set forth in her August 26th medical update that included the forwarding of the MPD job description for Police Officer and excerpts from the MPD Technical Communications Divisions Standard Operating Instructions on the Pole Camera Operations while also extending Padgett's Medical Leave to September 30, 2016.

12. On September 19, 2017, Dr. Steinpreis responded to the MPD questionnaire which the MPD considered to be incomplete, and on September 28, 2016 required Padgett to

forward the Steinpreis response to her medical doctor while extending her medical leave to October 14, 2016.

13. By October 10, 2016, Padgett provided the MPD with all updated restrictions from Dr. Shah, Dr. Dagam and Dr. Sosa all of whom indicated she could continue working under the accommodations she had been working under for the past 6 years.

14. On October 13, 2016, the MPD notified Padgett that due to Dr. Steinpreis' restrictions of August 26, 2016, they determined she could no longer work in a DPRU assignment with or without reasonable accommodation, but could perform in the Pole Camera Operator Assignment which they claimed that there were no such available positions.

15. As such, effective October 13, 2016, the MPD notified Padgett she was on medical leave for three months until January 13, 2017 or until her permanent medical condition improved or they had a position suitable to her restrictions become open.

16. On October 19, 2016, Padgett notified the MPD she had not requested a medical leave and wanted to return to a limited duty assignment while also filing for a duty disability retirement ("DDR") as it was her on-duty injury of December 14, 2008 that prevented her from remaining on the job as a full duty or limited duty officer.

17. Getting no response from the MPD and having been forced to go on unpaid leave and being required to pay her benefits, on November 18, 2016, Padgett amended her DDR application by also filing for a 90% disability retirement.

18. On January 12, 2017, Padgett after not receiving a response from the MPD regarding work potential or her medical leave status, contacted the MPD and was notified that her leave was extended to April 13, 2017 as there were no vacant pole camera operator assignments.

19. On April 12, 2017, knowing that there were open pole camera assignments in August 2016, and knowing that the MPD could have transferred officers with no medical

restrictions from pole camera operator assignments to other positions to allow her to work, and having experienced no processing on her DDR application, Padgett filed a charge of disability discrimination against the City with the EEOC.

20. The MPD did extend Padgett's medical leave and on September 15, 2017 notified Padgett that her medical leave would expire on September 25, 2017 at which time she would be subject to termination for a non-disciplinary fitness reason as there were no pole camera operator assignments available and her medical restrictions had not changed.

**FIRST CAUSE OF ACTION
VIOLATION OF THE
AMERICANS WITH DISABILITIES ACT OF 1990**

21. Reallege and incorporate herein by reference paragraphs 1 through 20 of this Complaint as if set forth at length herein.

22. Padgett is a qualified person under the Americans with Disabilities Act of 1990 as she suffers a permanent disability and was designated as such from at least December 2008.

23. The City and the MPD were aware of Padgett's permanent disability and work restrictions since at least December 2008 and updated by Dr. Steinpreis on August 26, 2016 understanding Padgett was capable of light duty employment with the MPD as long as she was accommodated with being allowed to work in a position in which she could use her superior visual and monitoring skills such as a pole camera operator or like kind assignments.

24. The City/MPD failed to provide Padgett her request for a reasonable accommodation, but instead indicated there were no pole camera operator or other like kind positions available despite the fact Padgett was removed from such a position and other officers without medical conditions could have been moved to other positions to make an opening for Padgett, but instead allowed Padgett to remain on unpaid leave subject to termination for non-disciplinary fitness reasons.

25. The City/MPD through its actions have disregarded Padgett's reasonable request for accommodation for the purpose of causing her to be placed on an extended unpaid leave and subject to termination for non-disciplinary fitness reasons, all of which has caused her to suffer emotional distress, loss of past and future wages and benefits including attorney fees and costs as allowed by law.

26. The City/MPD's deliberate and reckless indifference to Padgett's request for reasonable work restrictions was in violation of her rights to a reasonable accommodation under 42 U.S.C. §12112 (b) and entitle her to punitive damages as assessed by a jury.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 12203(a) FOR RETALIATION**

27. Reallege and incorporate herein by reference paragraphs 1 through 26 of this Complaint as if set forth at length herein.

28. The City and MPD retaliated against Padgett for engaging in protected activity under the Americans with Disabilities Act by allowing her to remain on unpaid leave without wages requiring that her doctors change their requested work restrictions in order to allow her to return to work even though they had positions that could have been made available upon which Padgett's work restrictions could have been honored.

29. The City/MPD retaliated against Padgett in violation of the Americans with Disability Act by declaring for period of one the year after Padgett provided her doctors work restrictions that there were no positions available that Padgett could fill.

30. Had Padgett not engaged in protected activity under the Americans with Disabilities Act, the City/MPD would not have retaliated against her, which was a substantial and motivating factor to run Padgett out of time to subject her to termination for non-disciplinary fitness reasons, to cause her to unnecessarily have to use all accrued time off and to keep her in an unpaid status by executing a plan to punish Padgett for the purpose of dissuading other

employees from requesting an accommodation to work a specific assignment that met her medical restrictions which she could perform.

31. As a result of the retaliation Padgett received from the City/MPD, she has suffered loss of past and future wages and benefits, together with attorney fees as allowed by law.

**WHEREFORE**, Plaintiff Natasha Padgett respectfully request that this Court:

A. Assume jurisdiction of this case;

B. Declare defendants' actions in failing to accommodate plaintiff denied her the rights afforded to her in the Americans with Disabilities Act, and enter a declaratory judgment to that effect;

C. Declare defendants' actions while acting under the color of law caused an unlawful employment practice against plaintiff by their acts of retaliation against her for performing protected practices made lawful under the Americans with Disabilities Act, and enter a declaratory judgment to that effect;

D. Award plaintiff compensatory and punitive damages in the sum of $300,000;

E. Award plaintiff loss of back pay, future pay, overtime pay and benefits.

F. Grant plaintiff costs, disbursements and attorney fees in bringing this action; and

G. Grant such further relief as the Court deems just and equitable.

**A TRIAL BY JURY IS HEREBY DEMANDED.**

Respectfully submitted, this 7th day of November, 2017.

    **RETTKO LAW OFFICES, S.C.**
    Counsel for Plaintiffs

    s/William R. Rettko
    State Bar No.: 01002608
    15460 W. Capitol Drive, Suite 150
    Brookfield, WI 53005
    (262) 783-7200

7
Case 2:17-cv-01562-PP   Filed 11/07/17   Page 7 of 7   Document 1